IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TIFFANY GARTH and NAKEITHRA**                  **PLAINTIFFS**
**JOHNSON, Administratrix of the**
**Estate of Greg Humphrey**

**V.**                                                                                **NO. 1:19-CV-192-DMB-RP**

**RAC ACCEPTANCE EAST, LLC, et al.**                  **DEFENDANTS**

## ORDER

Tiffany Garth and Nakeithra Johnson, as administratrix of Greg Humphrey's estate, assert negligence claims against RAC Acceptance East, LLC, based on allegations that a vehicle bearing RAC's name and driven by a RAC employee caused Garth and Humphrey to run off the road and sustain injuries and property damage. RAC, contending that it did not have a particular type of vehicle on the road when and where the accident occurred, has moved for summary judgment. Because deposition testimony shows there are genuine disputes as to material facts regarding the details of the accident, summary judgment is improper.

## I
## Procedural History

On October 4, 2019, Tiffany Garth and Greg Humphrey filed a complaint in the Circuit Court of Lee County, Mississippi, against RAC Acceptance East, LLC, "Fictitious Defendant A," "Fictitious Defendant B," and "XYZ Corporation." Doc. #2. The complaint asserts that while Garth and Humphrey were traveling in Humphrey's vehicle, "a vehicle bearing the name of … Rent-A-Center" operated by a RAC employee "came over into … Humphrey's lane, forcing him off the roadway on the right side and onto the shoulder of the roadway, thereby causing Plaintiffs' injuries and damages." *Id.* at 2. RAC, invoking diversity jurisdiction, removed the case to the

United States District Court for the Northern District of Mississippi on October 25, 2019.[1]  Doc. #1.

On March 18, 2021, Gregory Harbison, counsel for Humphrey, filed a suggestion of death stating that Humphrey died on March 11, 2021.  Doc. #126.  Approximately one month later, on April 13, 2021, RAC moved for summary judgment on the claims against it.  Doc. #127.  Harbison, purportedly acting on Humphrey's behalf, requested an extension to respond to the summary judgment motion.  Doc. #129.  Because Humphrey's death meant he was no longer a proper party, the Court denied the extension but stayed the case to allow an estate to be opened and the proper party to seek substitution.  Doc. #130 at 2.  By order of United States Magistrate Judge Roy Percy, Nakeithra Johnson, administratrix of Humphrey's estate, was substituted as the proper party on May 26, 2021.  Doc. #136.

Garth responded to the summary judgment motion, Doc. #132, and RAC filed a reply, Doc. #139.  Johnson filed a separate response to the summary judgment motion,[2] Doc. #142, and RAC replied, Doc. #144.

## II
## Standard of Review

A court shall enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue is genuine if the evidence is such that a reasonable factfinder could return a

---

[1] The notice of removal alleges that both Garth and Humphrey are citizens of Mississippi; "RAC's sole member is Rent-A-Center East, Inc., which is a Delaware corporation having its principal place of business in the State of Texas" such that "RAC is a resident of Delaware and Texas;" and because the plaintiffs seek $150,000 in damages in the complaint, the amount in controversy is satisfied.  Doc. #1 at 2–3.  Because complete diversity exists and there is no evidence the complaint's demand was not made in good faith, this Court has diversity jurisdiction over the claims asserted.  *See Smith v. Toyota Motor Corp.*, 978 F.3d 280, 282 (5th Cir. 2020) (citizenship of an LLC is determined by the citizenship of its members); *Henderson v. Allstate Fire & Cas. Ins. Co.*, 154 F. Supp. 3d 428, 431 (E.D. La. 2015) (plaintiff's allegation of a damages figure in excess of the jurisdictional amount controls if made in good faith).

[2] Johnson sought and received an extension to respond.  Docs. #140, #141.

verdict for the nonmoving party." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (cleaned up). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

The "party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact." *Jones*, 936 F.3d at 321 (alterations omitted). When the movant does not bear the burden of persuasion at trial, he may satisfy his initial summary judgment burden "by pointing out that the record contains no support for the non-moving party's claim." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the moving party satisfies his initial burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Jones*, 936 F.3d at 321 (cleaned up). When both parties submit evidence of contradictory facts, "courts may not make credibility determinations or weigh the evidence" but rather must resolve "factual controversies in favor of the nonmoving party." *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018).

### III
### Relevant Facts

On May 1, 2019, Humphrey and Garth were traveling north on the Natchez Trace in Humphrey's 2006 Chrysler 300 C. Doc. #127-1 at 12, 25; Doc. #127-2 at 10. Humphrey "saw a couple of cars coming towards [him], and then [he] saw [a] van, [a] box truck, coming from around the two cars." Doc. #127-1 at 13. The vehicle moved completely into Humphrey's lane. *Id*. at 21. To try to avoid the vehicle, Humphrey "went off to the right side into the ditch, slid sideways, hit a bump, came to a rest, and then managed to get the front tires … back on the pavement." *Id.* at 14. The vehicle, which was driven by a white female, did not stop. *Id.* at 13, 15; Doc. #127-2 at 23. The vehicle did not make contact with Humphrey's vehicle. Doc. #127-2 at 11.

Humphrey attempted to call 911 for assistance but he "couldn't hear anything."[3] Doc. #127-1 at 17–18. The airbags in the car did not deploy. *Id.* at 22. Both Humphrey and Garth were wearing their seatbelts. *Id.* at 24.

Humphrey suffered bruises to his elbow and stomach.[4] He was able to drive his vehicle following the accident and proceeded to drop Garth off at work approximately "five [to] ten minutes" from where the accident occurred.[5] *Id.* at 18. Despite driving it away from the scene, Humphrey's vehicle has been "in the shop" since May 2019. *Id.* at 31. Garth suffered injuries from the accident and has been unable to work. Doc. #127-2 at 22.

The parties dispute whether the vehicle Garth and Humphrey claim caused them to run off the road was a RAC vehicle. Garth and Humphrey both testified that the vehicle, a "commercial box truck," had a Rent-A-Center logo "[o]n the front and the sides." Doc. #127-1 at 22; Doc. #127-2 at 10–11. However, RAC submitted the declaration of Matthew Good, a district manager at RAC,[6] in which he states the company does "not have records of any commercial box truck on the Natchez Trace on May 1, 2019" and "[t]he only Rent-A-Center vehicle on the Natchez Trace

---

[3] RAC submitted a transcript of a recorded conversation between Humphrey and Pamela McVay in which Humphrey says he called 911 but "they couldn't figure out where we were." Doc. #127-5 at 11–12. Whether Humphrey was unable to connect to 911 or whether 911 could not find his location is immaterial to resolution of the motion.

[4] Humphrey had diverticulitis surgery approximately eight months before the accident. Doc. #127-1 at 30. Following the accident, his doctor checked to make sure Humphrey "hadn't torn anything from the accident." *Id.* at 32. The record does not indicate whether Humphrey's death in March 2021 was connected to his injuries in the accident.

[5] The parties dispute what happened following the accident. Humphrey testified he drove to an RAC location and spoke to a tall, black, female employee regarding the accident. Doc. #127-1 at 21. Katie Jones, a manager at RAC, testified there was not an employee who matched the description given by Humphrey at the store and Humphrey called the store while he was still on the side of the road. Doc. #127-4 at 8–9, 26–27. These conflicting facts are immaterial to the resolution of the present motion.

[6] In response to the motion, "Garth questions the personal knowledge of Mr. Good since he has not been identified by any of the Rent-A-Center employees as the district manager" on May 1, 2019. Doc. #133 at PageID 762 n.1. Rather, "[a] district manager by the name of Ron was identified." *Id.* "Because Mr. Good is the district manager and not in the store daily, Plaintiffs contend his knowledge is based upon inadmissible hearsay." *Id.* at PageID 773 n. 4.

4

of which we are aware is a van, driven by Carrie Horton." Doc. #127-6 at ¶¶ 5–6. Horton testified that she was on the Natchez Trace on the date of the accident in a van. Doc. #127-8 at 9.

## IV
## Analysis

Under Mississippi law,[7] "to prevail on a claim of negligence, the plaintiff must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation, and injury." *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). In its summary judgment motion, RAC argues the plaintiffs cannot establish the duty or causation elements. Specifically, RAC argues summary judgment is proper because (1) the plaintiffs "cannot demonstrate that RAC owed any duty because there is no evidence in the record that RAC had a box truck on the road that day;" (2) "there is not sufficient evidence that even if RAC did have a commercial box truck on the Natchez Trace that day … that it caused Plaintiffs' accident;" and (3) the plaintiffs "cannot create a 'fact dispute' with their own inconsistent testimony." Doc. #128 at 6. The plaintiffs respond that regardless of whether the vehicle was a van or truck, "there was a RAC vehicle on the Trace that Plaintiffs allege ran them off the road, causing them injuries and damages," and "this question of fact" creates "a jury question … that cannot be decided at the summary judgment stage." Doc. #133 at PageID 767; *see* Doc. #143 at PageID 945 ("Plaintiff Johnson has joined in Plaintiff Garth's Response to this Motion and incorporated the argument set forth therein into this response.").

### A. Duty

There is no doubt that a driver of a vehicle has a duty to operate the vehicle in a safe manner including, but not limited to, "keeping a proper lookout and being on alert for vehicles … ahead

---

[7] In this diversity action, the Court applies the substantive law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019).

in the highway." *See Ready v. RWI Transportation, LLC,* 203 So. 3d 590, 594 (Miss. 2016). But RAC, citing Good's affidavit, argues that because it "did not have a commercial box truck on the Natchez Trace" on the date of the accident, there is "*no evidence* in the record that RAC owed Plaintiffs a duty." Doc. #128 at 6. In that regard, RAC relies on *Sollie v. Nagia*, No. 1-10-3338, 2011 WL 10072085 (Ill. App. Ct. 2011), an Illinois state court decision where a defendant driver testified he was not on the road on the day of the plaintiff's accident and the court held that the plaintiff, who admitted she did not see the driver of the car causing the accident, failed to establish that the defendant owed her a duty. Doc. #128 at 7.

In her response, Garth distinguishes *Sollie* by pointing out the vehicle in question there was "a private auto" such that "the plaintiff would be forced to identify the driver in some … manner." Doc. #133 at PageID 771–72. Garth argues that *Jack Cole Co. v. Hudson*, 409 F.2d 188 (5th Cir. 1969), is more on point and, because the vehicle bore the RAC logo, there is a presumption it was owned and controlled by RAC and RAC has not provided the required "strong and clear" evidence to show its vehicle was not involved. Doc. #133 at PageID 768.

In reply, RAC argues that the plaintiffs "have proffered no evidence that there was a RAC box truck on the road that day[, t]here was testimony and evidence that a RAC van was on the road[, b]ut Garth (and Humphrey) cannot now change their sworn testimony that the cause of Humphrey's swerve was a box truck." Doc. #139 at 2 (emphasis omitted). RAC attempts to distinguish *Jack Cole* by asserting that while there were witnesses to the accident in *Jack Cole*, "here, there is no one who saw the accident, the swerve, or any RAC commercial box truck on the Natchez Trace." Doc. #139 at 4. Further, RAC argues Good's affidavit is "the exact same evidence" as was offered in *Bonilla-Torres v. Wal-Mart Transportation, LLC*, No. 1:07-CV-928, 2008 WL 11445404 (S.D. Miss. July 22, 2008). *Id.*

6

In *Bonilla-Torres*, the plaintiffs alleged a Wal-Mart tractor-trailer caused them to lose control of their vehicle. 2008 WL 11445404 at *1. Wal-Mart moved for summary judgment relying on an affidavit of Blake Hill, "who testifie[d] that at the time of the accident, all of Wal-Mart's tractors were equipped with Global Positioning System locators and messaging systems;" based on the GPS information, "no tractors owned by Wal-Mart were located near" the accident; and Wal-Mart contracted with major trucking companies to haul many of its trailers. *Id.* The district court found that under *Jack Cole* a presumption of ownership arose "from the fact that 'Wal-Mart' was displayed on the side of the trailer" but Wal-Mart rebutted the presumption through Hill's affidavit. *Id.* at *2. Because neither the plaintiffs nor the single witness could remember whether the *tractor* as opposed to the *trailer* bore the Wal-Mart logo, the district court found the plaintiffs failed to provide evidence that refuted Wal-Mart's GPS evidence and granted summary judgment. *Id.*

Here, RAC relies on Good's declaration stating there was not a RAC box truck on the Natchez Trace at the time of the accident. However, unlike in *Bonilla-Torres*, Good's statement is not confirmed by any GPS data. Also, Garth and Humphrey testified that the vehicle itself, rather than a trailer, bore the RAC logo. Because of the contradictions between Good's testimony and the testimony of Garth and Humphrey, genuine fact questions exist precluding summary judgment as to whether RAC's vehicle was on the same road as the plaintiffs on the day of the accident so as to be subject to the duty to operate safely (and whether such duty was breached).

### B. Causation

RAC argues there is no "fact question about whether RAC's act was a cause in fact" of the accident because "Plaintiffs' own testimony suggests that it was not necessary for Humphrey to veer off the road." Doc. #128 at 8. Garth responds that "[w]hile there were no cars in his lane,

Mr. Humphrey had to swerve off of the road and into a ditch to avoid a head-on collision" and the RAC vehicle's "illegal pass is the cause-in-fact" of the accident. Doc. #133 at PageID 773–74.

At the summary judgment stage, the plaintiffs must provide evidence showing that RAC's breach of a duty proximately caused their injuries. *Estate of Ellis v. MMC Materials, Inc.*, 311 So. 3d 691, 696 (Miss. Ct. App. 2021). "Proximate cause requires: (1) cause in fact; and (2) foreseeability. Cause in fact means that the act or omission was a substantial factor in bringing about the injury, and without it the harm would not have occurred." *Id.*

Here, Humphrey testified there were no cars in his lane when the RAC vehicle swerved into his lane and he "went off to the right side" of the road "into the ditch" to avoid the vehicle. Doc. #127-1 at 13–14. Garth testified there "may have been some people behind us." Doc. #127-2 at 33. Thus, there is evidence in the record that the RAC vehicle swerving into Humphrey's lane caused him to swerve to avoid a head-on collision. *See Acord v. Moore*, 243 So. 2d 55, 57 (Miss. 1971) (finding a jury question where the defendant, who was passing a vehicle in the plaintiff's lane, asserted that the driver of the plaintiff's vehicle "was the sole proximate cause of the collision"). Summary judgment is improper given the factual dispute about the cause of the accident.

### C. Factual Inconsistencies

RAC submits that "Humphrey's story contains … inconsistences" which show that "Humphrey and Garth seem to be attempting to weave a convoluted jury-determinant story but it is their *own* inconsistencies creating confusion." Doc. #128 at 10. RAC seems to argue that because "Humphrey's story is rife with inconsistencies" and RAC's employees testified that there was not a commercial box truck, but rather a van, on the Natchez Trace on the date of the accident, summary judgment is proper. *Id.* at 9–10. However, Humphrey testified that a "van, [a] box truck"

8

ran him off the road.[8]  To the extent RAC argues Humphrey's testimony is not credible, such a determination is not appropriate at the summary judgment stage.  *See Wells*, 885 F.3d at 889; *Watson v. Allstate Prop. & Cas. Ins. Co.*, No. 3:16-cv-987, 2019 WL 3300236 at *12 (S.D. Miss. July 3, 2018) (inconsistencies between plaintiff's statements in examination under oath and deposition rendered summary judgment improper because it "would require the Court to make impermissible credibility determinations").  Accordingly, summary judgment is not warranted.

## V
## Conclusion

RAC's motion for summary judgment [127] is **DENIED**.

**SO ORDERED**, this 4th day of October, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[8] Additionally, Jones testified that when Humphrey called the store he said that a *van* had ran him off the road.  Doc. #127-4 at 9.

9