IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**TIFFANY GARTH**                                                                                     **PLAINTIFF**

**V.**                                                                                            **NO. 1:19-CV-192-DMB**

**RAC ACCEPTANCE EAST, LLC**                                                  **DEFENDANT**

**OPINION AND ORDER**

After a jury awarded Tiffany Garth $200,000 on her negligence claim against RAC Acceptance East, LLC, RAC filed a post-trial motion for judgment as a matter of law or, alternatively, a new trial or remittitur. Because the Court finds the trial evidence sufficient to support the jury verdict and because RAC has not identified a manifest error of law or fact, RAC's post-trial motion will be denied.

**I**
**Relevant Procedural History**

On October 4, 2019, Tiffany Garth and Greg Humphrey filed a complaint in the Circuit Court of Lee County, Mississippi, against RAC Acceptance East, LLC, "Fictitious Defendant A," "Fictitious Defendant B," and "XYZ Corporation." Doc. #2. The complaint asserted negligence claims based on the plaintiffs' allegations that a RAC vehicle ran them off the road which resulted in "serious, disabling, and permanent bodily injuries" to them. *Id.* at PageID 13. RAC, invoking diversity jurisdiction, removed the case to the United States District Court for the Northern District of Mississippi on October 25, 2019. Doc. #1.

Garth's negligence claim[1] was tried by a jury October 18–20, 2021. Doc. #184. At the

---

[1] Humphrey died March 11, 2021. Doc. #131. His daughter, Nakeithra Johnson, as the administratrix of his estate, was substituted as the proper party following his death. Doc. #136. The parties stipulated to Johnson's dismissal before trial commenced. Doc. #177.

close of Garth's case in chief, RAC orally moved for judgment as a matter of law. The Court denied the motion and RAC presented its case. At the close of all evidence, RAC renewed its oral motion for judgment as a matter of law. The Court again denied the motion and sent the case to the jury. The jury found for Garth and awarded her $200,000 in damages. Doc. #192.

On November 19, 2021, RAC filed a "Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Remittitur." Doc. #198. The motion is fully briefed. Docs. #199, #205, #206.

## II
## Standards of Review

Pursuant to Federal Rule of Civil Procedure 50(a), a party may move for judgment as a matter of law "at any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). A Rule 50(a) motion may be granted on a claim or defense "[i]f a party has been fully heard on an issue [necessary to the claim or defense and] … a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In the event a Rule 50(a) motion is not granted, Rule 50(b) provides:

> No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"When a case is tried to a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016) (internal quotation marks omitted). To evaluate the sufficiency of the

evidence, a court must "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Id.* The reviewing court must "uphold the verdict unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Id.* (internal quotation marks omitted).

Rule 59(a), unlike Rule 50, does not allow for a directed judgment. Rather, it provides that a "court may, on motion, grant a new trial on all or some of the issues—and to any party— … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "Motions for a new trial … must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 240 n.4 (5th Cir. 2016). In this regard, "a trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence." *Seibert v. Jackson Cnty.*, 851 F.3d 430, 439 (5th Cir. 2017) (alterations omitted).

Whether under Rule 59 or Rule 50, federal courts in diversity cases "apply federal standards of review to assess the sufficiency or insufficiency of the evidence in relation to the verdict, but in doing so … refer to state law for the kind of evidence that must be produced to support a verdict." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (internal quotation marks omitted).

### III
### Relevant Trial Evidence

#### A. Events of May 1, 2019

Both Garth and Humphrey (by deposition) testified at trial regarding the events of May 1, 2019. *See* Doc. #195 at 153, 159–161. According to their testimony, on that date, they were traveling north on the Natchez Trace in a vehicle driven by Humphrey. *Id.* at 154. As two cars were approaching from the opposite direction, Humphrey saw a box truck move from behind the

3

car "all the way" into his lane. *Id.* at 154–55, 160–61. To avoid the truck, Humphrey "went off to the right side [of the road] into the ditch, slid sideways, hit a bump, came to a rest and then managed to get the front tires … back on the pavement." *Id.* at 156. There were no other cars in Humphrey's lane but the truck was "close enough to where [he] had to either run into it or run off." *Id.* at 155; Doc. #196 at 226–27. The truck "eventually got back into its lane and it kept going" without passing the two vehicles in front of it. Doc. #196 at 229.

Garth and Humphrey both testified that the truck bore the Rent-A-Center logo. Doc. #195 at 155, 158, 161. But Nixola Kathleen Mendoza, the store manager at the Rent-A-Center in Tupelo on May 1, 2019, testified that the only Rent-A-Center vehicle on the Natchez Trace on the date in question was a van, not a box truck; the box truck from the Tupelo Rent-A-Center location was in the parking lot all day on May 1, 2019, and she had the keys; and it "wouldn't make any sense" for a truck from another location, such as Booneville or Fulton, to be in the area where the accident occurred. Doc. #196 at 298, 301, 304–06. Similarly, Carrie Horton, the sales assistant manager of Rent-A-Center's subsidiary on May 1, 2019, admitted to driving a Rent-A-Center van northbound on the Natchez Trace on May 1, 2019, but stated she never drove southbound and she observed the box truck in the parking lot of the Tupelo store both in the morning when she picked up the van and later in the day when she returned the van. Doc. #197 at 412–14. However, Mendoza also testified that because none of the Rent-A-Center vehicles were equipped with GPS tracking, she was unable to know the exact location of other vehicles. Doc. #196 at 301–03. And Horton specifically testified she did not know the locations of the box trucks from the Booneville, New Albany, Ripley, Oxford, Columbus, and Holly Springs stores. Doc. #197 at 416–17.

**B. Events after May 1, 2019**

According to Garth's testimony, she injured her neck, shoulder, back, and right knee and

4

"stretched something on [her] side" in the accident. Doc. #195 at 171–72. Although she was "sore at first," she subsequently experienced pain and stiffness, which prompted her to visit the North Mississippi Medical Center emergency room two days after the accident. *Id*. at 168, 170.

After the emergency room visit, because she still felt stiff, had difficulty bending, and her left arm was heavy, Garth went to Youngblood Chiropractor on May 7, 2019. *Id.* at 174. She then went to Herndon Chiropractor for a second opinion the next day because she "knew something was wrong" since she was still in pain, stiff, limping, and having difficulty lifting items. *Id.* at 176–77. She went to Herndon "about eight times" and received a variety of pain relief treatment. *Id.* at 177–78. Garth also went to the Family Medicine Residency Clinic "about eight times" as a "followup from the emergency room" and attended physical therapy from May 2019 until February 2020. *Id.* at 179, 185. During this time, Garth described her pain as being a seven or eight on a scale of one to ten and reported having difficulty picking up her baby because it felt like something was "straining" on the left side of her body. *Id.* at 181.

On June 27, 2019, Garth had an MRI and found out she had "torn ligaments and tendons, and something was wrong with [her] bicep muscle." *Id.* at 190. Following the MRI, Garth visited an orthopedic doctor, Dr. Gabriel Rulewicz, on July 16, 2019. *Id.* at 191; Doc. #196 at 313.

Rulewicz testified that Garth's patient history indicated she was "complaining of left shoulder, neck, mid back, and right knee, and low back pain" two and a half months after a motor vehicle crash. Doc. #196 at 318–19. He was unaware of any other reason Garth was seeking treatment and because Garth "said that she wasn't having symptoms prior to the [vehicle crash], … the belief was that they started from the car crash." *Id.* at 319, 325.

Rulewicz diagnosed Garth with "an incomplete tear of the rotator cuff and impingement of her rotator cuff." *Id.* at 329. Steroid shots and rehabilitation failed to improve Garth's pain. Doc.

5

#195 at 192. Because she was still in pain, surgery "was the next option moving forward" and Rulewicz performed the surgery on September 10, 2019. *Id.*; Doc. #196 at 337–38. During the surgery, Rulewicz discovered Garth did not have a rotator cuff injury but rather inflammation and "tearing in the biceps as it attached to the labrum." Doc. #196 at 339. This injury "could have" been caused by the accident and Garth did not report anything else to Rulewicz that caused her shoulder pain. *Id.* at 340–41. When specifically asked if Garth's injury was caused by the accident "to a reasonable degree of medical certainty," Rulewicz testified that based on the information he had from Garth and what he observed on her shoulder, "it appeared that her injury sustained in the [vehicle crash] was consistent with what [was] found on her shoulder." *Id.* at 360–61.

Garth initially showed improvement following surgery but was still experiencing pain six months later. *Id.* at 347, 353. Additionally, Garth "had several limitations" after surgery and was unable to work in her position as a manager at Best Way, where she typically earned $882 per week. Doc. #195 at 197–98. She was out of work from September 10, 2019, until at least March 19, 2020. *Id.* at 199. Her employment with Best Way was terminated because she had not been released from the doctor's care. *Id.* at 203.

Garth testified that she was in a second accident in May 2020, when a vehicle she was driving was hit on the right side by another driver. Doc. #196 at 244–45. Rulewicz treated her again following the second accident. *Id.* at 354.

### C. Additional Effects

According to Garth's testimony, before the accident, she was "active" and able to go running, play football with her three sons, and was "very sociable." Doc. #195 at 166. Her father, Carl Jackson, also testified that Garth "was pretty outgoing, very independent," and athletic. Doc. #196 at 277.

6

After the surgery, Garth "was withdrawn," "didn't go out a whole lot," and "didn't associate with her friends." *Id.* at 288. She "was down a lot, depressed," short tempered, and snappy in a way that she had not been before the surgery. *Id.* at 289–90. She felt like she could not go to practice or school events with her children because of the pain and, while she was thirty-seven, she felt like she was seventy-five. Doc. #195 at 183. Following the accident, one of Garth's sons "had to go and live … with his dad, so that he [could] get back and forth to practice and football games" and Garth's mother had to care for her baby boy. *Id.* at 204.

Garth testified that she still has difficulty with personal hygiene because she "ha[s] to use one hand" rather than two. *Id.* at 184. She has trouble with household chores that she did not experience before the accident and has to rely on her mother and father for help. *Id.* at 206; Doc. #196 at 287. She doesn't sleep well due to pain in her shoulder. Doc. #195 at 207. As a result of the accident, Garth feels as though she can't trust people. *Id.* at 208. Although Garth's back and knee improved over time, she still has pain and stiffness in her shoulder. Doc. #196 at 254. She can still only lift her left arm "a little bit above ninety degrees" and her shoulder still hurts every day. Doc. #195 at 187–88.

## IV
## Analysis

RAC argues the evidence presented at trial is legally insufficient to establish that an RAC box truck was on the Natchez Trace on the date in question; even if an RAC truck was on the Natchez Trace, there is no evidence Garth's damages were the proximate result of RAC's negligence; and the evidence is insufficient to establish medical causation and emotional distress. Doc. #199 at 1–2. Alternatively, RAC argues the "jury was not properly instructed regarding the scope of RAC's liability for Ms. Garth's future pain and suffering related to her permanent shoulder injury" and the "$200,000 lump-sum jury award … was excessive and contrary to the

overwhelming weight of the evidence." *Id.* at 3.

Garth argues that RAC waived several of its arguments by failing to properly assert them at trial. *See* Doc. #205 at PageID 2529–30, 2535–37, 2541–42. However, because the Court determines that all of RAC's arguments fail on the merits, it declines to reach a determination on the waiver issues unless otherwise noted.

### A. Presence of an RAC Truck on the Natchez Trace

RAC argues there is "no legally sufficient evidentiary basis for the jury to find that a RAC box truck caused the accident" because

> the undisputed evidence shows: (1) the sole driver of a[n] RAC vehicle in the Tupelo area on May 1st was driving the RAC van, (2) the RAC box truck never left the parking lot that day, and (3) the only RAC vehicle in the area traveled only northbound on the Natchez Trace.

Doc. #199 at 12.[2] Garth submits that the contradicting testimony about the presence of an RAC truck on the Natchez Trace "is a classic credibility battle that must be weighed by the jury." Doc. #205 at PageID 2537. RAC replies that the evidence showed "the Tupelo RAC box truck never left the parking lot that day and that the Tupelo RAC box truck would have been the only truck servicing the area and traveling on the Natchez Trace at the time in question" such that "no reasonable jury could have disbelieved the uncontradicted and unimpeached testimony." Doc. #206 at 8–9.

RAC relies on *Brown v. Ford Motor Co.*, 479 F.2d 521 (5th Cir. 1973), to support its argument that no reasonable juror could disbelieve Mendoza's and Horton's testimony regarding the location of the box truck on the date in question. Doc. #199 at 12–14. *Brown* is easily

---

[2] Garth argues RAC waived this argument by failing to raise it in its trial motions. Doc. #205 at PageID 2536–37. RAC responds that it preserved this argument at trial by arguing it was "entitled to a directed verdict because Ms. Garth ha[d] not met her evidentiary burden of showing that a[n] RAC box truck was on the Natchez Trace and therefore ha[d] not established that RAC owed [her] a duty." Doc. #206 at 5.

8

distinguishable. In *Brown*, the plaintiff alleged that her husband's death in an automobile crash "was caused by the negligence of Ford Motor Company in assembling the automobile's steering mechanism." 479 F.2d at 522. The Fifth Circuit reversed the jury verdict for the plaintiff, finding the verdict was unsupported by the evidence based on "uncontradicted and unimpeached" witness testimony that "a special marking on the wheel taken from the [plaintiff's] car identified it as being one of a special order of steering wheels which was not delivered to Ford until some ten months after the latest possible date of manufacture of the car." *Id.* at 522, 524. Thus, "the wheel introduced in evidence as the steering wheel affixed to the automobile at the time of the accident could not have been the steering wheel which was affixed to the car by Ford at the time of the automobile's manufacture" and "the uncontradicted proof established that th[e] defect could not have been created by Ford during the manufacturing process." *Id.* at 523.

*Brown* dealt with unimpeached testimony regarding the *impossibility* that Ford attached the subject part to the vehicle. The situation here, however, does not present a similar impossibility. While RAC's witnesses, Mendoza and Horton, testified the box truck for the Tupelo store did not leave the parking lot on the date in question and there would be no reason for a truck from another location to be on the Natchez Trace, Garth established during her counsel's questioning of them that neither Mendoza nor Horton could testify regarding the locations of the trucks from other stores on that date. Unlike in *Brown*, the jury was not required to disbelieve Mendoza's or Horton's testimony to believe Garth's testimony that a Rent-A-Center box truck was on the Natchez Trace. RAC is not entitled to relief on this ground.

### B. Causation

RAC argues Garth failed to establish that it caused Humphrey to veer off the road, that the accident caused her injuries, or that it caused her emotional distress.

**1. Humphrey's driving**

RAC maintains that Garth failed to "submit any evidence showing how RAC's alleged negligence caused Mr. Humphrey to drive off the Natchez Trace causing her injury" and "has not shown it was negligence by RAC, and not Mr. Humphrey's bad or inattentive driving, that caused the accident."[3] Doc. #199 at 6–7. Garth responds that both her and Humphrey's trial testimony established the box truck was close enough that they had "to either run into it or run off;" Humphrey only had to take evasive action because of RAC's negligence; and veering off the road "was the only thing" Humphrey could have done to avoid a head on collision. Doc. #205 at PageID 2523–27. RAC replies that "Garth failed to present additional evidence or exclude other reasonable inferences, which is required under Mississippi law." Doc. #206 at 3. RAC also argues that Garth "submitted circumstantial evidence" to establish the alleged negligence but "a plaintiff can only prove proximate cause through circumstantial evidence if those circumstances permit a reasonable inference of a cause of the injury for which the defendant is responsible and exclude equally reasonable inferences of other causes for which the defendant is not responsible." *Id.* at 7.

One of the cases cited by RAC—*Mississippi Department of Transportation v. Cargile*—is instructive. 847 So. 2d 258 (Miss. 2003), *overruled on other grounds by Little v. Miss. Dep't of Transp.*, 129 So. 3d 132 (Miss. 2013). In *Cargile*, Kenneth Cargile claimed he "lost control of his truck when it hydroplaned after running through a large pool of water which had collected on the road." *Id.* at 260. He sued the state of Mississippi and the Mississippi Department of Transportation ("MDOT") asserting that they "negligently failed to inspect and maintain" the road where the accident took place, creating "a dangerous condition … which was the sole proximate

---

[3] Garth argues that RAC admitted "the only reason the car left the road is allegedly because a box truck got in its way" and this admission "should be the death knell to RAC's causation arguments." Doc. #205 at PageID 2522.

10

cause of his injuries and damages." *Id.* At the non-jury trial, Cargile and Pittman, a witness who lived on the road where the accident occurred, testified that it was raining at the time of the accident but neither saw the accumulation of water the night of the accident. *Id.* at 261–63. The trial court assigned fifty percent fault to MDOT and awarded Cargile damages. *Id.* at 265. On appeal, MDOT argued the evidence established that the causes of the accident were "Cargile's failure to keep a proper lookout, his truck's speed which was excessive for the conditions, and his failure to keep his vehicle under control." *Id.* at 261. In affirming the trial court, the Mississippi Supreme Court noted that "negligence may be established by circumstantial evidence in the absence of testimony by eyewitnesses provided the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inference." *Id.* at 263. Because there were "no eyewitnesses" to the accident, the Mississippi Supreme Court held "negligence [could] be established by circumstantial evidence such as the testimony of Pittman and Cargile." *Id.* at 265.

Here, the only identified witnesses to the accident were Garth and Humphrey. Humphrey testified the Rent-A-Center truck was "all the way" in his lane and he had to either hit it or go off the road. Garth similarly testified that Humphrey had to swerve to avoid a head-on collision. Given this trial testimony, the jury could make the legitimate inference that the Rent-A-Center vehicle's presence in Humphrey's lane caused him to take evasive action. Accordingly, RAC is not entitled to relief on this ground.

### 2. Medical causation

RAC also argues that "the medical records [Garth] submitted show only a possible causal link, based on what [she] told physicians treating her, between Mr. Humphrey's car driving into a ditch and the injuries she says she suffers" such that Garth "has not established that RAC had

11

anything to do with her injuries, let alone was a substantial factor in causing them."[4] Doc. #199 at 8. Garth counters that because "[t]he general rule in Mississippi is that expert testimony is not required where the facts surrounding the alleged negligence are easily comprehensible to a jury," "all [she] was required to do was establish causation through her testimony that she had no injuries prior to the negligent conduct but afterwards she did." Doc. #205 at PageID 2531. RAC replies that "this is not a simple and routine case, and Ms. Garth could not establish medical causation through her own testimony." Doc. #206 at 8.

In *Welford v. Thomley*, a case cited by RAC,[5] the Southern District of Mississippi addressed the appropriate standard for establishing medical causation under Mississippi law. No. 1:11-cv-9, 2012 WL 3264555, at *5 (S.D. Miss. Aug. 8, 2012). In *Welford*, the plaintiff alleged she suffered permanent shoulder injuries in a car accident. *Id.* The only "medical testimony" she presented was the deposition of Donnis Harrison, a physician who did not begin treating her until a year and a half after the car accident occurred and after she had already undergone two shoulder surgeries by a different physician. *Id.* at *1, *3. When asked "to a reasonable degree of medical probability, whether or not the injury [he] treated … Welford for was in any way related to [the] automobile accident," Harrison responded that "[t]here's no way for [him] to prove that it was or was not a cause of the accident." *Id.* at *4. Viewing Harrison's testimony "as a whole …, in his medical opinion, he simply could not testify that Welford's shoulder injury was more likely than not caused by the car accident." *Id.* at 5. Because under Mississippi law, "in all but the simple and routine cases it is necessary to establish medical causation by expert testimony" and "medical testimony

---

[4] Garth argues RAC waived its argument with respect to medical causation because "[a]t no time after Garth rested nor after the close of all evidence did RAC ever raise medical causation." Doc. #205 at PageID 2530. Citing its written motion rather than its oral motion, RAC responds that "Garth had notice that medical causation was at issue in the Court's consideration of RAC's motion for judgment as a matter of law." Doc. #206 at 4.

[5] Doc. #199 at 8–9.

is not probative unless it is in the terms of probabilities and not possibilities," the district court found Welford "failed to establish proximate cause for her multiple shoulder surgeries [because] she ha[d] not presented evidence connecting the car accident to the treatment she underwent to treat her shoulder instability." *Id.* at *4, *5 (cleaned up).

Unlike in *Welford* where the physician remained neutral on the issue of causation, Rulewicz expressed an opinion about the source of Garth's injuries. Specifically, when asked "to a reasonable degree of medical certainty, is it your opinion that Tiffany Garth's injury to her shoulder was caused by her auto accident of May 1st, 2019," Rulewicz answered:

> So from that statement, from all the information I have, it stated she didn't have pain prior to her [vehicle crash] and then began to have shoulder pain following that, and the pain was consistent with all the new findings that we had. So, therefore, … based on her medical stuff, it appeared that her injury sustained in the [vehicle crash] was consistent with what we found on her shoulder.

Doc. #196 at 360–61. He also testified that the labrum tear he observed during Garth's surgery "could have" been caused by the accident. *Id.* at 340–41. Because Rulewicz expressed an opinion linking Garth's injuries to the accident, the jury was entitled to credit that opinion. *See Thompson v. Dung Thi Hoang Nguyen*, 86 So. 3d 232, 237 (Miss. 2012) (affirming denial of plaintiff's motion for a directed verdict because physicians' opinions on whether injuries were caused in car accident "were not obligatory or binding on triers of fact but were advisory in nature" such that the jury "may credit them or not as they appear entitled, weighing and judging the [treating] expert's opinion in the context of all the evidence in the case and the jury's own general knowledge of affairs") (alterations omitted).

### 3. Emotional distress

RAC argues Garth is not entitled to emotional distress damages because she "has not even alleged that RAC's alleged tortious conduct was intentional, and she has not shown it was reckless"

13

and she "has offered no proof that emotional distress from RAC's alleged negligence resulted in any medically cognizable condition requiring treatment." Doc. #199 at 11. Garth asserts this argument is waived because "RAC never questioned emotional distress in any motion made before this Court." Doc. #205 at PageID 2535. As to the substance of RAC's argument, Garth submits that because she suffered "actual harm and a resulting physical injury, the intentional or reckless determination would not be applicable" and, if the jury's general award included emotional distress damages, there was sufficient evidence to support the award based on her and Jackson's testimony. *Id.* at PageID 2535–36.

The Court agrees RAC's argument is waived and/or abandoned because RAC did not address this topic in the oral or written motions it made during trial and did not respond to the waiver argument in its reply in support of its post-trial motion. Regardless, the argument is meritless.

RAC relies on one of the Court's instructions to the jury (given with RAC's consent) which stated:

> [I]f you find that Rent-A-Center simply did not act as a reasonable person would have under the same or similar circumstances, or that Rent-A-Center's actions were simply negligent, then you may not award the plaintiff damages for mental suffering unless she proves that it is more likely true than not true she suffered any actual harm or physical injury.

Doc. #197 at 490. It seems RAC misunderstands this jury instruction and Garth's burden. When a plaintiff suffers physical injuries resulting from a defendant's negligence, "emotional distress damages resulting from such injury … [are] properly regarded as a compensable element of damages." *Lonoaea v. Corr. Corp. of Am.*, 665 F. Supp. 2d 677, 682–83 (N.D. Miss. 2009); *see Lyons v. Zale Jewelry Co.*, 150 So. 2d 154, 157 (Miss. 1963) ("It is clear … that from the very earliest times the law has allowed recovery for mental distress … where the act of the defendant

14

producing such distress also involved an independent tort, such as … a negligently caused physical injury ….").  This is not to be confused with the tort of "'negligent infliction of emotional distress'[g]enerally … used in Mississippi tort law to refer to a separate cause of action in cases where the plaintiff suffered no compensable physical injury." *Lonoaea*, 665 F. Supp. 2d at 682–83.  Garth need not prove her emotional distress resulted in physical injury to be awarded damages for such; if she offered evidence of a physical injury as a result of RAC's conduct—which she did—the jury may properly award emotional distress damages for even a simple negligence claim.[6]  *See Sears, Roebuck & Company v. Young*, 384 So. 2d 69, 72 (Miss. 1980) ("[N]o recovery may be had for mental anguish *in the absence of physical trauma* unless there is definite and objective physical injury produced as a result of the emotional stress wrongfully caused."); *Estate of Miles v. Burcham*, 127 So. 3d 213, 218 (Miss. 2013) ("Emotional distress is a reasonably foreseeable injury to a car-accident participant …."); *cf. Paz v. Brush Engineered Materials, Inc.*, 949 So. 2d 1, 4 (Miss. 2007) (discussing requirement of medically cognizable injury resulting from emotional distress "in the absence of physical injury accompanying the negligent conduct").  Such was the case here.

### C.  Superseding Cause Instruction

RAC argues a new trial is warranted because the Court failed to instruct the jury on superseding cause regarding Garth's second car accident.  Doc. #199 at 16–17.  Garth argues RAC waived this defense "before trial ever began" by failing to raise superseding cause in its answer or by not mentioning it in the final pretrial order.  Doc. #205 at PageID 2541.  Citing its answer, RAC replies that it sufficiently raised superseding cause as an affirmative defense.  Doc. #206 at 5–6.

---

[6] The cases RAC cites support this conclusion.  *See Robinson v. Nationwide Mut. Fire Ins. Co.*, No. 4:11-cv-103, 2013 WL 12187498, at *6 (N.D. Miss. Jan. 15, 2013) (discussing availability of emotional distress damages where plaintiff did not allege a physical injury); *see also Campbell v. Beverly Enters.*, 724 F. Supp. 439, 440 (S.D. Miss. 1989) (same).

15

The issue of superseding cause is not listed in the pretrial order. *See* Doc. #180. So the Court agrees RAC waived this post-trial argument. *See Excel Modular Scaffold & Leasing Co. v. Occupational Safety & Health Rev. Comm'n*, 943 F.3d 748, 754 (5th Cir. 2019) ("[A] party's failure to include an affirmative defense in a pretrial order constitutes a waiver of that defense—even if the defense was included in other pleadings."). However, because Garth did not object to the relevant jury instruction based on the pretrial order,[7] the Court will address the merits nevertheless.

Garth argues that a superseding cause instruction was not warranted because "RAC did not explore how [she] was injured in the second wreck nor did it ask her whether any of her previous injuries were aggravated or made worse by the second wreck." Doc. #205 at PageID 2542. RAC replies that "there is evidence that Ms. Garth's left shoulder injury was aggravated/injured further by her second accident" because she testified "that the accident kind of swung [her] or twisted [her] a little bit and Dr. Rulewicz testified that Ms. Garth [was] currently under his care again for left shoulder injuries." Doc. #206 at 6.

"A superseding cause 'is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" *Byrd v. Stubbs*, 190 So. 3d 26, 31 (Miss. Ct. App. 2016) (quoting *Causey v. Sanders*, 998 So. 2d 393, 405 (Miss. 2008)). "Typically, the defendant has the initial burden of demonstrating that a superseding cause cuts off its liability for an injury." *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 298 (5th Cir. 2021).

During the charging conference, the Court rejected RAC's superseding cause instruction

---

[7] *See Excel Modular*, 943 F.3d at 755 (where evidence is entered on an issue not included in the pretrial order, failure to object does not amount to consent because "consent occurs only when the parties squarely recognized that they were trying an issue not raised in the pleadings") (internal quotation marks omitted).

16

because there was insufficient evidence in the record to support it. Doc. #197 at 478. To now support its superseding cause argument, RAC points to Garth's testimony that she was in a second car accident where the collision "kind of swung [her] or twisted [her] a little bit" and to Rulewicz's testimony that he had "seen her" for a new injury since the second accident. Doc. #199 at 16 (citing Doc. #196 at 244–45, 356, 362). At trial, however, RAC failed to illicit testimony from either Garth or Rulewicz or submit documentary evidence to illustrate what type of injury Garth may have suffered in the second accident or in any way show the injuries she complained of were attributable to that accident. Accordingly, RAC's arguments do not alter the Court's conclusion that RAC failed to put forth sufficient evidence to support a superseding cause instruction.

### D. Excessiveness of Jury Award

Finally, RAC argues "the jury award of $200,000 is excessive" because the jury awarded Garth "no less than $114,000 for pain and suffering or emotional distress."[8] Doc. #199 at 19. Garth responds that the evidence supported a jury award of $80,000 for medical expenses and lost wages and the total amount of the award does not "shock the conscience" as required for remittitur to be appropriate. Doc. #205 at PageID 2546.

> A remittitur is an order awarding a new trial, or a damages amount lower than that awarded between those alternatives. Thus, before a court may order a remittitur, it must first determine that [a] new trial is warranted. Except in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may not reduce the amount of damages without giving the plaintiff the choice of a new trial, for to do so would deprive the parties of their constitutional right to a jury.

*Miss. Phosphates Corp. v. Analytic Stress Relieving, Inc.¸* 402 F. App'x 866, 870 (5th Cir. 2010) (cleaned up). Under Mississippi law, a court may grant a new trial if it finds "that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias,

---

[8] Notably, the cases RAC cites for its argument deal with additur rather than remittitur. *See* Doc. #199 at 19–20.

prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence." Miss. Code Ann. § 11-1-55.

Here, the $200,000 jury award is supported by the evidence and thus is not excessive. Garth testified that her medical bills totaled $58,000, and submitted documentary evidence supporting the same. Doc. #195 at 195; *see* Doc. #186. Additionally, she testified that she missed twenty-five weeks of work, resulting in approximately $22,000 in lost wages. Doc. #195 at 199; Doc. #197 at 503–04. Finally, both Garth and her father testified regarding the pain she suffered following the accident, the impact her injuries had on her ability to care for herself and her children, and the changes in her mental state following the accident. Given this evidence, even if the Court did assume the general verdict included $80,000 economic damages and $120,000 for emotional distress, such an award—one and a half times the economic damages—is not excessive. *See Estate of Miles*, 127 So. 3d at 217 & n.4 (affirming $60,000 award where plaintiff "asked for $7,084.55 in medical expenses, $40,000 for past emotional distress, $8,000 for future emotional distress, and $5,000 for past physical pain"); *Stewart v. Gulf Guar. Life Ins. Co.*, 846 So. 2d 192, 205 (Miss. 2002) (finding trial court erred in reducing $500,000 emotional distress damages to $50,000 on breach of contract claim "[b]ecause there was substantial evidence in support of the jury's award").

## V
## Conclusion

"RAC Acceptance East, LLC's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial or Remittitur" [198] is **DENIED**.

**SO ORDERED**, this 15th day of July, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**